UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSE DOMINGUEZ,

        Petitioner

v.                                   C-1-00-938

HAROLD CARTER,

        Respondent

**ORDER**

This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (Doc. 11), Petitioner's objections thereto (Doc. 16), Respondent's response (Doc. 19), and Petitioner's motion to submit additional authority (Doc. 20). The Magistrate Judge concluded that Petitioner's claims were procedurally defaulted and lacked merit, and therefore recommended that the petition be denied. (Doc. 11)

**Procedural History/The Parties' Claims**

On July 14, 1995, Jose Dominguez was indicted by the Hamilton County, Ohio, grand jury on one count of aggravated trafficking of cocaine as defined in Ohio Rev. Code § 2925.03(A)(10). (Doc. 4, Ex. A). On January 20, 1998, a jury found him guilty of that count, and further found that Dominguez previously had been convicted of a drug offense. The trial court sentenced Dominguez to twenty (20) years of actual incarceration to life.

Petitioner, assisted by new counsel, filed an appeal to the Ohio Court of Appeals, First Appellate District, raising the following assignments of error:

> 1. The trial court committed reversible error by permitting testimony and evidence regarding count one of the indictment, wherein appellant's two co-defendant's [sic] - but not defendant - were charged with trafficking in marihuana §2925.03(A)(7).
>
> 2. The trial court committed reversible error by permitting the trial to proceed and overruling defendant's motions for acquittal under Crim. Rule 29.
>
> 3. The trial court committed reversible error by permitting testimony and evidence regarding appellant's prior conviction for a drug offense.

(Doc. 5, Ex. E).

On January 29, 1999, the Ohio Court of Appeals issued a decision overruling the assignment of errors and affirming the judgment of the trial court. (*Id.*, Ex. G). The Ohio Court of Appeals made the following findings of fact, which are entitled to a presumption of correctness:[1]

> This is a drug case that involved a series of telephone calls between a confidential informant working for narcotics officers in Cincinnati and three drug dealers in Texas. Claudia Alfaro was the confidential informant. She pretended that she wanted to purchase marijuana and cocaine. Rafael Alvarado and Manuela Alvarado, who were a married couple, and defendant-appellant Jose Dominguez were the drug dealers in Texas. Dominguez – who referred to himself as "Luther" – was the supplier of the drugs.
>
> The conversations initially resulted in a shipment of marijuana from Mr. and Mrs. Alvarado to Alfaro. Later, Mr. and Mrs. Alvarado agreed that Alfaro's "cousin" would meet them in McAllen, Texas, to pay for the marijuana and to negotiate the sale of two kilos of cocaine. That "cousin" was actually Drug Enforcement Administration agent Noemi Guzman.
>
> On July 3, 1995, Guzman met Mr. and Mrs. Alvarado at a Denny's restaurant in McAllen. Dominguez was also with them. At that

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner failed to rebut the court's findings with clear and convincing evidence.

> meeting, the parties discussed the sale of cocaine, and Mrs. Alvarado gave Guzman a sample of the cocaine. Also, at that meeting, Guzman called Cincinnati and had the dealers talk with Alfaro. When Dominguez spoke with Alfaro, they further negotiated the terms of the sale.
>
> The three drug dealers were arrested in the parking lot of the restaurant.
>
> . . .
>
> Here, the state based its case on the series of telephone conversations between Alfaro and the drug dealers in Texas, which culminated in the July 3, 1995, arrests at Denny's. During these conversations, the parties discussed the sale of both marijuana and cocaine. Alfaro spoke with Dominguez and learned that he was the supplier of the drugs. When the shipment of marijuana was sent to Alfaro, this provided the basis for the "sting" operation that occurred at Denny's: it created the opportunity for Alfaro's "cousin" to meet the dealers and further discuss a sale of cocaine.
>
> . . .
>
> Here, Dominguez was identified as the person who supplied drugs to Mr. and Mrs. Alvarado. These drugs included cocaine. Dominguez was present with Mr. and Mrs. Alvarado at the Denny's in Texas when Guzman was given a sample of cocaine and when the sale of cocaine was negotiated. At the Denny's, Dominguez actually spoke with Alfaro on the telephone and further negotiated the sale of cocaine.

(Doc. 5, Ex. G, pp. 2, 4, 7). Petitioner did not file a further appeal to the Ohio Supreme Court. (Doc. 5, p. 5).

On June 9, 1999, Petitioner filed a petition for a writ of mandamus in the Ohio Supreme Court against his appellate attorney, to order his counsel to provide him with documents pertaining to his criminal case, including the trial transcript and appellate briefs. (Doc. 1, Ex. C). On August 4, 1999, the Ohio Supreme Court denied the petition. *State ex rel. Dominguez v. McEvilley,* 713 N.E.2d 1047 (Table) (Ohio 1999).

On December 23, 1999, Petitioner filed a *pro se* application to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure, claiming that his appellate counsel was ineffective for failing to raise the following claims:

> 1. Appellant's rights to confrontation and due process of law as secured by the 6th and 14th Amendments were violated when non-testifying accomplices [sic] and/or co-defendants [sic] statements were introduced at appellant's trial.
>
> 2. The prosecutor committed prosecutorial misconduct rendering the appellant's trial fundamentally unfair in violation of due process of law, Equal Protection of the Law and the 6th and 14th Amendment when the prosecutor repeatedly referred to the Appellant's heritage as a Mexican National in voir dire of the jury and asked the jury to consider the "drug problem in the community" and not to "feel sorry" for the appellant because he was a Mexican while extensively tying Mexicans as a group and immigrants in general to the drug problem in the "community."
>
> 3. The Appellant was denied a fundamentally fair trial in violation of substantive due process and the 5th, 6th and 14th Amendments when State's witness Claudia Alfaro was permitted to testify after being actually paid money in exchange for her testimony in violation of 18 U.S.C. § 201(c)(2).
>
> 4. Appellant was denied the right to effective and conflict-free trial counsel when trial counsel failed to move to bifurcate Appellant's prior conviction for possession of marijuana to the sentencing phase of the trial; failed to disclose that trial counsel was married to a prosecutor in the same office and failed to object to the prosecutor's improper voir dire, John Mercado's testimony vouching for Claudia Alfaro, failed to cause a voiceprint analysis of the tapes and failed to move to disqualify Claudia Alfaro as a paid witness or move for mistrial for these errors in violation of the 6th and 14th Amendments.
>
> 5. The cumulative errors occurring at both trial and on appeal deprived the appellant of a fundamentally fair trial and appellate procedure in violation of due process of law and the 5th, 6th and 14th Amendments.

(Doc. 5, Ex. H).

As his first cause for his delay in filing his application for reopening, Petitioner argued that he had difficulty securing a transcript which was necessary because he was not fluent in English and was unable to remember the errors at trial. He argued that he needed the transcript so that his jailhouse lawyers who were not present at his trial could identify the errors at trial. Petitioner indicated that his appellate counsel refused to send him a copy of this trial transcript until after he filed a mandamus action against him and that he was indigent and could not afford to purchase the transcript. Petitioner claimed that the failure of the State of Ohio to provide him with a transcript so that he could timely pursue his remedies after his appeal violates "the Equal Protection Clause of the 14th Amendment and abrogates his access to post-appeal remedies." (Doc. 5, Ex. H, p. 2). As his second cause for the delay, petitioner argued that he relied on the case of *Lilly v. Virginia,* 527 U.S. 116 (1999) to support his application for reopening and that case was not decided until several months after the Ohio Court of Appeals decision in his case. (*Id.,* Ex. H, pp. 2-3).

On June 28, 2000, the Ohio Court of Appeals denied petitioner's application as untimely. (*Id.,* Ex. J). The Court reasoned:

> Appellant has failed to show good cause for filing his application almost eleven months after this Court's judgment was journalized, well beyond the ninety days permitted by App. R. 26(B)(2)(b). Ignorance of the law does not constitute good cause for the untimely filing of an application for reopening.

(*Id.*).

Petitioner appealed the decision to the Ohio Supreme Court, reasserting the claims he raised in the Ohio Court of Appeals and raising the following additional propositions of law:

> 1. O.R.App.P. 26(B) is and [sic] ineffective State corrective process within the meaning of 28 U.S.C. § 2254(b)(1)(B)(ii) and deprives criminal defendants the right to Equal Protection and Due Process of law as secured by the 14th Amendment and Article I, §9, cl. 2 of the

-5-

> United States Constitution.
>
> 2. Where Ohio has no judicial forum for addressing constitutional new rules of criminal procedure that are made retroactive by the United States Supreme Court as applied to cases just decided on direct appeal, the right to due process of criminal appellants secured by the 14th Amendment are violated by that lack of judicial form.
>
> 3. Appellate counsel was ineffective for failing to inform Dominguez of his post appeal remedies or to provide timely the transcripts, briefs or opinion of the Court of Appeals necessary to file those post appeal remedies.

(Doc. 5, Ex. K). On October 4, 2000, the Ohio Supreme Court dismissed the appeal because it did not involve any substantial constitutional question. (Doc. 5, Ex. L).

Petitioner next filed the instant petition for a writ of habeas corpus, raising the following grounds for relief:

> **Ground one**: Petitioner was denied effective assistance of Appellate Counsel and due process of law after the direct appeal as of right due to the deficient performance of appellate counsel. Appellate counsel: (1) failed to inform Petitioner of his available direct appeal remedies; (2) failed to timely supply the Petitioner with the papers, transcripts and documents necessary to continue with the litigation . . . .
>
> **Ground two**: Petitioner was denied effective assistance of Appellate Counsel and due process of law in his direct appeal as of right when counsel failed to identify and raise the meritorious errors appearing on the record of the trial.
>
> **Ground three**: Petitioner was deprived of his right to due process of law and fundamental fairness, the privileges secured by Article I, §9 cl.2, the protections of Article VI, cl.2 and the 14th Amendment. This deprivation occurred when the State of Ohio deprived petitioner of an adequate and effective State corrective process. The State failed to include in the corrective process any provisions for indigent and/or non-English speaking criminal defendants to be afforded access to the information, instruments or documents needed to vindicate federal constitutional rights.

That failure is based solely on Petitioner's financial status, causing the indirect suspension of the Writ of Habeas Corpus, and an abrogation of federal enforcement of the Supremacy Clause.

**Ground four**: Petitioner was deprived of the right to effective appellate counsel where that counsel failed to identify and raise errors implicating confrontation clause and due process in violation of the 6th and 14th amendments. Specifically, appellate counsel failed to assign as error the trial court's admission of hearsay statements made by a non-testifying, co-conspirator that did not exhibit indicia of reliability and trustworthiness.

**Ground five**: Appellate counsel was ineffective for failing to identify and raise the ineffectiveness of trial counsel for failing to object to, or move for mistrial based upon prosecutorial misconduct when a prosecutor repeatedly argues the nationality of petitioner as a Mexican citizen during voir dire and closing argument. The prosecution engaged in further misconduct in argument by attempting to link the defendants' nationality and "immigrants" in general to the "drug problem in the community." Such an improper appeal from the prosecutor clearly designed to urge the jury to convict Petitioner based upon that illegal and irrelevant basis in violation of the 5th, 6th and 14th Amendments.

**Ground six**: Appellate counsel was ineffective in failing to assign as error trial counsel's ineffective assistance in failing to properly [sic] when a law enforcement officer, designated as an Ohio Evid. R. 615(2), case agent vouches for and bolsters the truthfulness and credibility of other State witnesses.

**Ground seven**: Appellate counsel was ineffective in failing to identify and raise trial counsel's ineffectiveness in failing to object or move for mistrial when petitioner's rights to be free from the testimony of a witness who is paid money in exchange for her testimony as secured by 18 U.S.C. §201(c)(2) were violated. Prosecution witness, Claudia Alfaro, admitted during her testimony that part of the monetary payments she received included payment for her services as a prosecution witness in the cases she informed upon.

**Ground eight**: Appellate counsel was ineffective in failing to raise several instances of ineffective assistance of trial counsel.

**Ground nine**: The cumulative errors and Grounds for Relief occurring at the petitioner's trial and appeal rendered the trial and appeal

>fundamentally unfair and a violation of due process of law secured by the 5th, 6th, and 14th Amendments.

(Doc. 1).

In his return of writ, Respondent asserted that Petitioner's claims had been procedurally defaulted in the state courts, but did not argue that the claims were waived for habeas corpus review, and instead addressed the merits of the claims. (Doc. 5, p. 6). In a later filing entitled "Respondent's Submission of Supplemental Authority," however, Respondent asserted that Petitioner's claims were procedurally defaulted because Petitioner failed to file his application for reopening in a timely manner. (Doc. 6).

On January 16, 2003, Magistrate Judge Jack Sherman, Jr. filed a Report and Recommendation concluding that each of Petitioner's habeas claims was procedurally defaulted and also lacked merit, and therefore recommending that Petitioner's petition be denied. (Doc. 11). Petitioner thereafter filed successive motions to extend the time for filing objections to that Report and Recommendation (Docs. 12, 13), which extensions the Court granted through March 10, 2003. (Doc. 13). Due to a clerical error, however, the Court mistakenly adopted the Report and Recommendation, absent any objection by Petitioner, on March 6, 2003. (Doc. 14). The Court later granted Petitioner's motion for reconsideration (Docs. 17, 18) upon the filing of Petitioner's objections (Doc. 16), and reinstated the Report and Recommendation.

Petitioner's objections to the Report and Recommendation essentially are twofold: 1) that the Magistrate Judge "erred in finding [that] Ohio Appellate Rule 26(B) is an adequate and effective state corrective process as written, or as applied [ ] in this case;" and 2) that the Magistrate Judge "erred in finding [that] Dominguez's appellate counsel was not ineffective." Specifically, Petitioner contends that enforcement of Ohio App. R. 26(B)'s timeliness requirement violates his federal right to due

process given his alleged inability to obtain a trial transcript to support an ineffective assistance of appellate counsel claim before the filing deadline. In addition, he urges that his appellate counsel was constitutionally deficient due to both his failure to provide Petitioner with such trial transcript and other documents in a timely manner, and his failure to raise an ineffective assistance of counsel claim on appeal based upon trial counsel's failure to object to "improper vouching" testimony. Petitioner further asserts that at the time of his objections, the first issue – the adequacy and effectiveness of Rule 26(b) – was pending before the United States Court of Appeals for the Sixth Circuit.

In response, Respondent argues that the Magistrate Judge correctly found that all of Petitioner's grounds for relief were procedurally defaulted due to his failure to show good cause for not filing his Rule 26(B) application within ninety days of the appellate judgment. Respondent first argues that Petitioner's situation is distinguishable from the single Ohio case[2] Petitioner cites for the proposition that appellate counsel's failure to provide an inmate with legal documents constitutes good cause for an application to reopen an appeal out of time. *See State v. Lopez*, Case No. 99-CA-120 (Ohio Ct. App. Greene County April 11, 2002). Observing that Petitioner was being assisted by a "jailhouse lawyer" knowledgeable about Ohio's filing deadlines, Respondent urges that Petitioner cannot demonstrate good cause for his late filing. As to Petitioner's second objection, Respondent maintains that the vouching testimony was not improper, but concurs in the Magistrate Judge's conclusion that Petitioner was not prejudiced by such testimony, even if improper. Accordingly, Respondent urges that appellate counsel was not constitutionally deficient for failing to raise that issue on appeal.

Since the date of Respondent's response, Petitioner has filed a motion to submit additional

---

[2] The citations contained in Petitioner's subsequent "motion to submit additional authority" do not address that particular issue. (*See* Doc. 20).

authority (Doc. 20), citing two additional cases for the Court's consideration. As Respondent has not opposed or otherwise responded, that motion is GRANTED.[3] Petitioner's petition and objections to the Report and Recommendations now are ripe for resolution by this Court.

## ANALYSIS

Ohio App. R. 26(B)

The record shows that the Ohio Court of Appeals issued a decision unfavorable to Petitioner on his direct appeal on January 29, 1999. Not until nearly eleven months later, on December 23, 1999, however, did Petitioner file an application to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure, claiming ineffective assistance of appellate counsel. Rule 26(B) provides as follows:

> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

Ohio App. R. 26(B)(1).

Having reviewed the entire record, this Court concludes that the Magistrate Judge's exhaustive analysis of the law applicable to Petitioner's untimely Rule 26(B) application is a well-reasoned and accurate recitation of grounds which support a finding that Petitioner's current claims have been procedurally defaulted. As neither Petitioner's objections nor his supplemental authority sets forth any legal basis for reversing the Magistrate Judge's conclusion to that effect, this Court accepts the recommended decision on that issue in accordance with Fed. R. Civ. P. 72(b).

---

[3] Such ruling reflects no opinion as to the relevance or persuasiveness of such cited cases.

At the time the Magistrate Judge issued his Report and Recommendation, however, the United States Court of Appeals for the Sixth Circuit had not addressed definitively a corollary issue of some significance to this Petitioner's position – *i.e.*, whether a proceeding under Ohio's Rule 26(B) constitutes part of a criminal defendant's direct appeal, as to which a constitutional right to counsel attaches.  The appellate court since has answered that question in the negative, in *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005) (*en banc*), *cert. denied*, ___ U.S. ___, 126 S.Ct. 1880 (2006).

In *Lopez,* the majority found "that Rule 26(B) creates a collateral post-conviction procedure, and is not part of the direct right of appeal." *Id*. at 341.  In so holding, the court explicitly overruled *White v. Schotten*, 201 F.3d 743 (6th Cir.), *cert. denied*, 531 U.S. 940 (2000), a case advanced by Petitioner in support of the opposite proposition (*i.e.*, that a Rule 16(B) application <u>does</u> constitute a "continuation of the direct appeal").  (*See* Doc. 16, p. 10).  Reasoning that a criminal appellant denied counsel during a collateral proceeding as to which no constitutional right to counsel existed "has not suffered an injury cognizable on habeas," the court held that dismissal of Lopez's petition for writ of habeas corpus was proper.  *Lopez*, 426 F.3d at 353.

Although the issue in *Lopez* was not directly on point with Petitioner's procedural default issue herein, Chief Judge Boggs' dissent in *Lopez* nonetheless underscores the significance of that decision to the particular issue now before this Court.  Referring to a case in which a mentally retarded defendant acting without counsel had not received a timely copy of his trial transcript, yet was found by the Ohio courts not to have established good cause for an untimely Rule 26(B) application to reopen, Judge Boggs affirmed the State of Ohio's right to "interpret its own reopening standard" stringently, even under seemingly compelling circumstances.  *See id.* at 361 (Boggs, C.J., dissenting) (citing *State v. Williams*, No. 82364, 2005 WL 1177879 (Ohio Ct. App. May 17, 2005)).

If Ohio is entitled to find no good cause under the circumstances described in *Williams*, presumably there is no constitutional infirmity in the Ohio appellate court's identical conclusion as to this Petitioner's untimely Rule 26(B) application. This Court therefore determines that Ohio App. R. 26(B) is an adequate and effective state corrective process for purposes of federal habeas corpus review. Petitioner's due process challenge to Rule 26(B) on that basis therefore is not well taken. Accordingly, for the reasons set forth in the Magistrate Judge's Report and Recommendation, as modified and supplemented herein, Petitioner's objection to the procedural default finding is OVERRULED, and the Court ADOPTS the Report and Recommendation as to that issue.

Ineffective Assistance of Appellate Counsel

Petitioner's second objection to the Report and Recommendation challenges the Magistrate Judge's conclusion that the representation provided by Petitioner's appellate counsel was not constitutionally deficient. Having adopted the Magistrate Judge's conclusion that the claims Petitioner raises herein were procedurally defaulted and thus waived for purposes of habeas review, we reiterate and likewise adopt the Report and Recommendation's conclusion that Petitioner's procedural default obviates the need to address the merits of his ineffective assistance of counsel claim. (*See* Doc. 11, p. 11). Nevertheless, this Court determines that Petitioner's ineffective assistance of appellate counsel claim also would fail on its merits.

Extrapolating the *Lopez* holding, *supra*, to its logical conclusion, we find that appellate counsel cannot be deemed to have provided ineffective assistance relative to the preparation of a Rule 26(B) application, a stage of proceedings at which petitioners have no right to counsel at all. *See id.*, 426 F.3d at 352 ("there is no federal constitutional right to assistance of counsel at [the Rule 26(B) application] stage"). Petitioner thus cannot maintain an ineffective assistance of counsel claim based upon his

appellate counsel's failure to timely provide a trial transcript and other legal materials in connection with Petitioner's Rule 26(B) application.

Although Petitioner's attempt to articulate an ineffective assistance claim in that context is unavailing, he also asserts that his appellate counsel was constitutionally deficient for failing to raise on direct appeal a claim of ineffective assistance of trial counsel, based upon his trial attorney's failure to object to improper vouching by a prosecution witness. Considering that claim, the Magistrate Judge found that testimony by a Cincinnati Police Department narcotics agent regarding the credibility of a confidential informant who had testified against Petitioner did "amount[ ] to improper vouching and bolstering by the prosecution." (Doc. 11, p. 25). The Magistrate Judge nonetheless concluded that such improper conduct did not give rise to a due process violation, because "[t]he testimony at issue was not extensive" and did "not have a tendency to mislead the jury" or "misstate the evidence," and because "the evidence of the petitioner's guilt was strong." (*Id*.).

After reviewing the entire record, this Court concludes that the Magistrate Judge's analysis of the due process implications of that prosecution witness's vouching testimony was well-reasoned and correct. We modify the Report and Recommendation only to clarify that we have applied the standard set forth in *Strickland v. Washington*, and affirmatively find that Petitioner was not prejudiced by his appellate counsel's conduct in that regard. *See* 466 U.S. 668, 693 (1984). Having concluded that no due process violation occurred, we find it unnecessary to consider Respondent's contention that the vouching was not improper under the circumstances presented. We simply find that Petitioner's appellate counsel was not constitutionally deficient for failing to raise an ineffective assistance claim on appeal based on trial counsel's failure to object to vouching by a prosecution witness.

Having found that neither his failure to timely provide a transcript nor his failure to raise the

improper vouching issue on appeal constituted ineffective assistance on the part of appellate counsel, we also conclude that those instances of conduct could not rise to the level of constitutionally deficient performance when combined with other examples of purported deficiency raised in Petitioner's objections. (*See* Doc. 16, p. 15). Again applying *Strickland*, *supra*, this Court finds no reasonable probability that but for even the cumulative effect of all alleged errors on the part of appellate counsel, Petitioner's trial would have yielded a different result. The Court therefore ADOPTS the Recommendation that Petitioner's ineffective assistance of appellate counsel claim be found to be without merit, and Petitioner's objections thereto are OVERRULED.

## CONCLUSION

Petitioner's motion to submit additional authority (Doc. 20) hereby is GRANTED. Following a *de novo* review of the record pursuant to Fed. R. Civ. P. 72(b), the Court hereby ADOPTS the Report and Recommendation of the United States Magistrate Judge (Doc. 11), as modified and supplemented herein. Accordingly, Petitioner's objections (Doc. 16) to the Report and Recommendation hereby are OVERRULED, Petitioner's petition for writ of habeas corpus (Doc. 1) hereby is DENIED with prejudice, and this matter hereby is DISMISSED and TERMINATED on the docket of this Court.

The Court further DIRECTS that a certificate of appealability shall not issue with respect to the dismissal on procedural grounds of Petitioner's claims for relief herein because "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the two-part standard enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000), which is applicable to procedurally-barred claims.[4] A certificate of appealability also shall not issue with

---

[4] Because this Court finds that Petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether the petition states a valid constitutional claim. *See Slack*, 529 U.S. at 484.

respect to the alternative dismissal of Petitioner's claims on the merits because, for the foregoing reasons, Petitioner has failed to make a substantial showing of the denial of a constitutional right that is remediable in this proceeding. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

Pursuant to 28 U.S.C.§ 1915(a)(3), the Court further CERTIFIES that an appeal of this Order would not be taken in good faith. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1977).

**IT IS SO ORDERED.**

          s/ Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court

J:\HJWF\00-938.r&r.wpd